### HOUSTON ABELL V. THE STATE.

No. 11499.   Delivered April 4, 1928.

**1.—Negligent Homicide—Charge of Court—On Issue Not Raised—Properly Omitted.**

Where, on a trial for murder which resulted in a conviction for negligent homicide of the first degree, there was no error in the failure of the court to submit the issue of an accidental killing, there being no evidence in the case raising such issue.

**2.—Same—Continued.**

Appellant himself testified that he intentionally fired his pistol in the direction of the deceased. If, at the time he fired the shots, an apparent danger of causing the death of the deceased appeared, he was guilty of negligent homicide, although he did not intend to kill the deceased. See Biggerstaff v. State, 120 S. W. 840.

**3.—Same — Misconduct of Jury — Viewing Scene of Homicide — Practice Condemned.**

The practice of permitting the jury to view the place where the crime was committed is condemned in this state. See Kile v. State, 291 S. W. 1104, and other cases cited.

**4.—Same—Continued.**

Where the order of the court overruling a motion for a new trial recites that evidence was heard on the complaint of misconduct of the jury,٫ it will not be presumed on appeal that the affidavits attached to the motion were considered, or that they were alone considered. Where the record indicates that the court heard evidence on the issue, this court must presume that the trial court's action in overruling the motion was correct, and that the evidence was sufficient to justify his action. See Sykes v. State, 2 (2nd) S. W. 863, and other cases cited.

**5.—Same—Continued.**

If the jury had received evidence from an inspection of the ground that could have militated against the rights of appellant, and the matter was properly brought before this court for review, a reversal of the case would necessarily result. See Watson v. State, 106 S. W. 509.

Appeal from the District Court of Wilbarger County. Tried below before the Hon. Robert Cole, Judge.

Appeal from a conviction for negligent homicide in the first degree, penalty six months in the county jail.

The opinion states the case.

*Storey, Leake & Storey* of Vernon, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

CHRISTIAN, JUDGE.—Under an indictment charging murder, appellant was convicted of negligent homicide of the first degree and his punishment assessed at six months' confinement in the county jail.

Appellant contended in the trial court and now contends that the evidence raised the issue of an accidental killing. In paragraph 14 of the charge the court instructed the jury that "homicide is excusable when the death of a human being happens by accident or misfortune, though caused by the act of another who is in the prosecution of a lawful object by lawful means." He further instructed the jury in the same paragraph that "the lawful act causing the death of another must be done by lawful means and used in a lawful degree." In paragraph 15 of the charge the jury were instructed in substance that, if they had a reasonable doubt that appellant shot and killed the deceased but at the time had no intention of killing him and that from the direction and manner in which he fired the shot there was no apparent danger to appellant that said shot would kill the deceased or any other person and that appellant used the

degree of caution which an ordinarily prudent person would use under the same or similar circumstances, they would acquit appellant.

Appellant timely excepted to said paragraph 15 on the ground that said charge was in effect a charge on negligent homicide, whereas the issue of accidental homicide should have been submitted untrammeled by the question of negligence. In other words, appellant contended that he was entitled to a separate, distinct and unrestricted charge on accidental homicide. We are unable to agree with his contention. In our opinion the testimony of appellant himself raised the issue of negligent homicide of the first degree, but failed to raise the issue of accidental homicide. Appellant was a city policeman of the city of Vernon, Texas. Having been advised by a Mrs. Swartwood that she had been assaulted, raped and robbed and having been given a meager description of her assailant appellant, accompanied by another policeman, returned to the business section of Vernon for the purpose of seeking and arresting the offender. G. M. Stroud, the deceased, was seen by appellant and his brother officer walking diagonally across a street. Being of the opinion that deceased was probably the offender, appellant said to him: "Stop a minute, I want to talk to you." Instead of stopping, deceased kept walking, at the same time looking back over his shoulder at appellant and his companion. Whereupon appellant said to deceased: "I am an officer, I want to talk to you." At that this point appellant got out of the car. Deceased began to run. We quote from appellant's testimony on direct examination as follows: "The man then broke and run. That is the first time that I hollered more than an ordinary conversation, and that is what I told him, to stop; I said that tolerable loud. And the man broke and run, and the course he was pursuing he would hit the sidewalk just before he got to the mouth of the alley in front of Sumner-Colley's office; and when I told him two or three times to stop I pulled my gun and fired one shot down and to the right. My intention was to frighten the man into stopping. I wanted to stop him because I thought that was the man I wanted, if not for that cause for some other. He had a small bundle under his right arm. I did not shoot to hit him, I shot down to the right. I figure he was around seventy or eighty feet from me approximately when I fired the first shot. When I fired the first shot the man did nothing that I could tell, he didn't even act like he heard the shot. He was still running, and just about the time that he got even with the mouth of the alley I fired another shot, down

and to the right, but pulled it a little bit closer to him with no intention of hitting him. About the time I fired my second shot Mr. Pittman fired one shot, but I don't know whether he fired before or after me; the shots came so near together that I couldn't tell. When I was firing those shots I did not know who this man was. I learned afterwards who he was, when he stopped and I approached him he told me who he was, he told me his name was Stroud. After I fired the second shot the first I noticed he began to slow up, and the first thing that struck me was that he had decided to stop, and he run, I guess, twenty-five feet and stopped, and just about the time he stopped he says, 'Oh, you have shot me'."

Appellant's description of the transaction showed beyond dispute that he intentionally discharged his pistol in the direction of deceased. If at the time he fired the shots, an apparent danger of causing the death of deceased appeared, appellant was guilty of negligent homicide, although he did not intend to kill deceased. Biggerstaff v. State, 129 S. W. 840. There being no issue of an accidental killing and appellant's own testimony clearly bringing the homicide within the definition of negligent homicide of the first degree, the charge complained of by appellant could in no manner have been prejudicial to his rights.

In his amended motion for a new trial, appellant alleged in substance that during the trial of the case the jury visited the scene of the homicide and viewed the ground and the location of the buildings and objects about which testimony had been given. Attached to the motion were the affidavits of ten jurors in support of the averments contained in said motion.

The practice of permitting the jury to view the place where the crime was committed is condemned in this state. Kile v. State, 291 S. W. 1104; Lovett v. State, 87 Tex. Crim. Rep. 548, 223 S. W. 210; Fate v. State, 73 Tex. Crim. Rep. 278, 164 S. W. 1018; Riggin v. State, 42 Tex. Crim. Rep. 472, 60 S. W. 877. No evidence on the question of the misconduct of the jury in the respect mentioned is brought before this court either by bill of exception or statement of facts. The order of the court overruling the motion for a new trial recites that evidence was heard thereon. When the order of the court overruling the motion for a new trial recites that evidence was heard, it will not be presumed on appeal that the affidavits attached to the motion were considered, or that they were alone considered. Where the record indicates that the court heard evidence on the issue, this court must presume that the court's action in overruling the motion was correct, and that the trial court acted on

evidence that was sufficient to justify his action. Sykes v. State, 2 (2nd) S. W. 863; Crouchett v. State, 99 Tex. Crim. Rep. 572, 271 S. W. 99; Hughey v. State, 98 Tex. Crim. Rep. 413, 265 S. W. 1047. Applying this rule to the instant case, we must presume that the court's action in overruling the motion for a new trial was correct. If the jury had received evidence from an inspection of the ground that could have militated against the rights of appellant and the matter was properly before this court for review, a reversal of .the case would necessarily result. Watson v. State, 105 S. W. 509.

Finding no reversible error, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.