## LONNIE W. WILKERSON v. THE STATE.

No. 15672. Delivered March 22, 1933.
Rehearing Denied April 26, 1933.
Reported in 59 S. W. (2d) 392.

The opinion states the case.

*Otis Rogers* and *Shropshire & Shropshire,* all of Fort Worth, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for five years.

It was charged in the indictment, in substance, that appellant, with malice aforethought, killed Buster Grimsley by shooting him with a pistol.

Three sixteen year old boys, one of whom was deceased, were hunting golf balls on the grounds of the Ridgelea Golf Club, which is about four miles from the city of Fort Worth. Upon seeing an employee of the club, the boys ran. Responding to a call from the club, appellant, who was a policeman of Fort Worth, and Roy Montgomery, another policeman, came to the grounds. When the officers approached the boys fled. Getting out of his car, appellant hollered "Stop." The boys continued to run, and appellant fired several shots at them. The state's version of the transaction was, in substance, as follows: Appellant fired two shots in the direction of deceased and his companions. These shots hit the ground about thirty feet behind them. Appellant fired a third shot which struck deceased in the back. Deceased then threw his hands to his chest and started back toward the appellant, saying to him that he would stop. As deceased approached the officer, he held one hand up and the other to his chest. At this point appellant fired another shot. Deceased fell to the ground, saying "Frog (referring to one of his companions) I am dying; I can't breathe." · Deceased's companion said to appellant "Mister, what shall we do with him, he is shot?" Appellant replied, "Lay him down and let him die; I ought to have killed you too."

There was no testimony on the part of appellant that deceased or his companions had stolen any property belonging to the golf club. Appellant admitted that he fired four or five

shots, saying that when deceased and his companions failed to stop, he drew his gun out and shot into the ground. He testified that it was his purpose to scare them in order to get them to stop, saying "I never did at any time shoot at or intend to hit any of those boys." Further, appellant denied that he said to let deceased die, and that he should have killed deceased's companion. Appellant testified that, when he got to the golf club, no one had told him that any property had been stolen, nor did he find any stolen property on deceased and his companions. He said that he had been advised that the boys had been bothering the employees of the golf club. At this juncture we quote from appellant's testimony as follows:

"I shot at the ground. I heard the testimony of Mr. Benson and these other people and Mr. Montgomery to the effect that the first bullet knocked dust up behind these boys and in direct line behind these boys, and that is true. I did not think I was shooting pretty close to those boys on the first shot because I didn't take aim and had the gun down something like this (indicating). I had it pointed down just like this (indicating). It is not true that I pulled it down deliberately on those boys and shot but this Hefley boy did step out to one side after the first shot, either the first or second shot, and stopped and remained there during the time of this shooting. I don't think the second shot hit closer in to the other two boys. * * * I do not say the second shot hit the dust in line with the boys. As to whether or not I raised my elevation on the next shot, will state I don't think that I did. I know it hit the ground and I saw where it hit the ground. * * * I did not shoot straight at those boys with all the accuracy that I could command on that second shot. This third bullet that I fired hit the ground over to the left of the two boys that was stopped and it ricocheted and hit the ground on the side of the hill there. It hit the ground and knocked the dust on the side of the hill up there, which was after it went through this boy's body, but it hit the dust behind him and ricocheted upon the side of the hill."

The court charged on murder, and submitted an instruction to the jury on murder without malice. Further, an instruction was submitted covering the law of negligent homicide in the second degree. One of the instructions on negligent homicide was predicated upon a killing in the performance of an unlawful act denounced as a misdemeanor; that is, the carrying of a pistol. The charge on the other phase of negligent homicide was based on the commission of an act not penal, but such an act as would give just occasion for a civil action. With this view of the charge, we advert to appellant's objection to the

action of the court in permitting parol proof to the effect that the place where deceased was killed was not within the corporate limits of the city of Fort Worth. Our view of the matter makes it unnecessary to decide whether the objection was well taken. The state's testimony was sufficient to support a conviction for murder. The verdict of the jury expressly found appellant guilty of murder without malice. Appellant's description of the transaction showed that he intentionally discharged his pistol in the direction of deceased and his companions. If at the time he fired the shots an apparent danger of causing the death of deceased appeared, appellant was guilty of negligent homicide, although he did not intend to kill deceased. Abell v. State, 5 S. W. (2d) 139. In short, appellant's version of the transaction brings the homicide within the definition of negligent homicide. If the jury had believed appellant's version, they should have convicted him of negligent homicide. Having accepted the state's version and convicted of murder, we are unable to perceive how appellant was injured by parol proof that the place where the homicide occurred was without the corporate limits of Fort Worth. The court was probably in error in predicating a charge of negligent homicide on the act of unlawfully carrying a pistol. However, there was in the charge an instruction predicating negligent homicide on the performance of an act not penal, but such as would give just occasion for a civil action. If the jury had believed appellant's testimony, there was nothing to prevent them from giving application to the charge on negligent homicide. We deem untenable the position that the proof as to the place the homicide occurred could have militated against a conviction for negligent homicide, or influenced the verdict returned by the jury.

We have carefully examined all of appellant's contentions and are unable to reach the conclusion that reversible error is presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE. — A re-examination of the record leaves us of the opinion that the disposition of the appeal made upon the original hearing is correct. A further discussion of the matter is not deemed necessary.

The motion is overruled.

*Overruled.*