Jose MAURICIO, Appellant,

v.

The STATE of Texas.

No. PD–0923–03.

Court of Criminal Appeals of Texas.

Jan. 12, 2005.

David S. Barron, Bryan, for Appellant.

Jeffrey L. Van Horn, First Asst. State's Atty., Matthew Paul, State's Atty., Austin, for State.

## OPINION

HOLCOMB, J., delivered the opinion of the unanimous Court.

This case presents three questions: (1) whether the court of appeals erred in holding that the trial court permitted a "jury view" as that term is understood in law, (2) whether the court of appeals erred in holding that the trial court erred in permitting that jury view, and (3) whether the court of appeals erred in holding that the trial court's error was harmless. We answer the first question in the negative, we answer the second question in the affirmative, we do not reach the third question, and we affirm the judgment of the court of appeals.

We begin our discussion with a review of the relevant facts. On January 24, 2002, a Brazos County grand jury presented an indictment that charged appellant with felony possession of cocaine with intent to deliver. *See* Tex. Health & Safety Code § 481.112(a) & (d). On April 3, 2002, the State brought appellant to trial under that indictment. At the guilt/innocence stage of trial, the State's principal witness was Bryan Police Officer Gabriel Alvarez, who testified in relevant part as follows: On the evening of November 23, 2001, at the beginning of his shift, Alvarez searched the back of his patrol car for contraband, as was his routine, and found nothing. Later that evening, he arrested appellant during the course of a traffic stop. After he arrested appellant, he handcuffed him, placed him in the back of his (*i.e.*, Alvarez') patrol car, and took him to the county jail. Shortly thereafter, he (*i.e.*, Alvarez) searched the back of his patrol car again and found six small bags of a white, powdery substance, later identified as cocaine.

At the conclusion of Alvarez' in-court testimony, the State asked the trial court to take the jurors out to the court's parking lot so that they could watch Alvarez demonstrate how he searched his patrol car on the evening of appellant's arrest. The trial court granted the State's request over appellant's objection. The following then transpired:

> The Court: Members of the jury, we're going to relocate to consider some testimony, some demonstrative testimony. This is being offered for the limited purpose to demonstrate to you a procedure. It would be—you should not talk to each other while we're going down there or while we're down there. You shouldn't make any kind of inquiry. You shouldn't ask any questions. I know it might be frustrating for you. I am having to restrain you in that regard. But there is case law about how it is improper to permit jurors to ask questions of witnesses during a trial. And so, you shouldn't discuss this. It is the duty of the attorneys to make sure that you all can see what they are trying to communicate through the testimony. I am going to ask you to—we're going to

take a five minute break. Then [the bailiff] will lead you downstairs. We will get the court reporter located down there. Everything we do has to be on the record. So, I'm going to give her a minute to get set up. And me, the attorneys, the defendant, and the witness [Alvarez] will meet you all down there in about ten minutes.

(Court relocates to the parking lot.)

The Court: Okay. Let's go on the record. Present are all three attorneys, the witness, the defendant, and all twelve jurors. Six on one side of the car, six on the other. This is going to have to be in a question/answer format. And I will ask for the benefit of the court reporter, Mr. Phelps [the prosecutor] and Officer Alvarez, if you would, please speak loudly so that she can hear you. Same is true for Mr. Paul [defense counsel]. Go ahead.

Q: (by Mr. Phelps) Officer Alvarez, this is the type of patrol car that you drove on November 23?

A: This is the same car.

Q: Okay. What I would like you to do, if you would, please, you have described for the jury your procedure of searching the back of the vehicle at the beginning of your shift as you did it on the night of November 23. Would you now show the jury the procedure you go through? How you did it on November 23, 2001. And if you would, just explain what you're doing as you're doing it.

A: I always start by just a visual inspection, what I can see on the top here, the dash here, the seats that I can see without moving anything. This rear seat, bottom cushion, folds over. And I always fold over as such, exposing the floorboard here. And then I run my hand underneath the back cushion so

that if anything is stuffed under there, it can come out.

I go along—I go along from one end to the other. Then, just looking—inspecting underneath this plastic mat, and under there to see if there is anything underneath there. If nothing is found, I just put it back into place, just like that.

Q: You checked the floorboards in front of the seat as well?

A: Yes, sir, I do.

Q: And did you do that on the night of November 23?

A: Yes, I did.

Mr. Phelps: You Honor, at this time could we have the other jurors switch around? Do it one more time?

The Court: All right. Let's do that. All right. Will y'all swap sides?

(Jurors comply.)

Q: (by Mr. Phelps) Officer Alvarez, if you would demonstrate it again, again explaining what you're doing, so the jury understands.

A: Again, I do the visual inspection. Anything obvious. Then when I get to the seat, I just pull it out in this manner. And then as far as I can to the partition [between the front and back seats]. And then I do my visual inspection, run my hand underneath this area, so that— ensure that nothing was placed underneath here. And if it is all clear, I just place it—it slides right back into place like that.

Mr. Phelps: At this time that's all I have.

Mr. Paul: I don't have any questions.

With the demonstration over, everyone returned to the courtroom, and the trial continued as before. The jury later found appellant guilty as charged in the indictment, and assessed his punishment at im-

prisonment for twenty years and a fine of $10,000.

On direct appeal, appellant argued that "the trial court in this case did not merely abuse its discretion in allowing the jury view [*i.e.*, the jury's trip to the trial court's parking lot to watch Alvarez' demonstration]—it had no discretion at all to allow it." The State argued in response that what the trial court permitted in this case was not a true "jury view" but rather merely a demonstration because the jury was not taken to see the actual crime scene. According to the State, "[a] jury view could have only occurred in this case if the jury was taken over to the Bryan Police Department and allowed to view the [patrol] car while in the sally port [where Alvarez conducted the second search and found the cocaine] and while [Alvarez] testified exactly where the cocaine was found." The State also argued, in the alternative, that even if what the trial court permitted was considered a jury view, "jury views are within the discretion of the trial court."

On May 8, 2003, the Fourteenth Court of Appeals affirmed the judgment of the trial court. *Mauricio v. State*, 104 S.W.3d 919 (Tex.App.-Houston [14th Dist.] 2003). Although the court of appeals agreed with appellant that what the trial court permitted in this case was a true jury view and that "the trial court erred in allowing [it]," the court of appeals held that the trial court's error was harmless since Alvarez testified on the stand, without objection, and "described in detail his search of the backseat [of the patrol car] before and after appellant's arrest." *Id.* at 922–923.

On February 11, 2004, we granted both appellant's and the State's petitions for discretionary review in order to determine whether the court of appeals erred, either in whole or in part. *See* Tex.R.App. Proc. 66.3(c). Appellant, in his petition and brief, argues that the court of appeals erred in holding that the trial court's error was harmless. He also argues that "[n]o jury view was necessary" in this case because "the backseat of the patrol car could have been photographed and the photographs ... shown to the jury inside the courtroom." The State, in its petition and brief, argues that the court of appeals erred in holding that the trial court permitted a jury view rather than merely a demonstration. The State also argues, in the alternative, that the court of appeals erred in holding that the trial court erred in permitting the jury view. According to the State, "[t]he trial court ... acted within its discretion in allowing the jury to go outside the courtroom to the adjacent parking lot and observe the officer's demonstration" because "[s]uch evidence was relevant to the case and it would have been impractical, if not impossible, to have presented the evidence in the courtroom."

■ We turn first to the State's argument that the court of appeals erred in holding that the trial court permitted a jury view as opposed to a mere demonstration. The term "view," as understood in law, refers to the act or process by which the trier of fact ventures forth to observe places or objects that are material to litigation but that cannot reasonably be brought, or satisfactorily reproduced, within the courtroom. *See Black's Law Dictionary* 1568 (6th ed.1990); 23A C.J.S. *Criminal Law* § 1156 (1989); 4 *Wigmore on Evidence* § 1162 (Chadbourne rev.1972). If the trier of fact is a jury, the view is properly termed a "jury view." *See* H. Wendorf, "Some Views on Jury Views," 15 Baylor L. Rev 379 (1963). In this case, the jury, acting with the trial court's permission and under its supervision, left the courthouse and went to the court's parking lot in order to watch Officer Alvarez demonstrate how he searched his patrol car on

the evening of appellant's arrest. We hold that what the trial court permitted in this case was a "jury view" as that term is understood in law, and the court of appeals did not err in holding likewise.

■ We turn next to the State's alternative argument that the court of appeals erred in holding that the trial court erred in permitting the jury view. There was a time in which, for a variety of reasons, we condemned jury views. *See, e.g., Weeks v. State,* 476 S.W.2d 310, 316 (Tex.Crim.App. 1972) (trial court may not allow jury view of crime scene); *Abell v. State,* 109 Tex. Crim. 380, 5 S.W.2d 139, 141 (App.1928) (same); *Kile v. State,* 106 Tex.Crim. 328, 291 S.W. 1104, 1105 (App.1927) (same). However, in *Jones v. State,* 843 S.W.2d 487, 499 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993), we held that the question of whether to grant or deny a request for a jury view rests "within the trial court's [sound] discretion."[1] The court of appeals in this case cited *Jones* and even acknowledged that "trial judges ... have discretion to grant [jury views]," but the court of appeals did not explain how the trial court

abused its discretion when it permitted the jury view.

■ A trial court, in exercising its discretion to grant or deny a request for a jury view, must consider the totality of the circumstances of the case, including, but not limited to, the timing of the request for the jury view, the difficulty and expense of arranging it, the importance of the information to be gained by it, the extent to which that information has been or could be secured from more convenient sources (*e.g.,* photographs, videotapes, maps, or diagrams), and the extent to which the place or object to be viewed may have changed in appearance since the controversy began.[2] *See* J. Strong, *et al., McCormick on Evidence* § 216 at 27 (5th ed.1999); Wendorf, *supra,* at 390–391. In addition, the trial court, in exercising its discretion to grant or deny a request for a jury view, must give opposing counsel an opportunity to be heard on the question. *See Clemente v. Carnicon–Puerto Rico Mgmt. Assoc.,* 52 F.3d 383, 386 (1st Cir.1995), *overruled on other grounds, United States v. Gray,* 199 F.3d 547 (1st Cir.1999).[3]

1. Professor Wendorf has commented:
   Texas courts have long admitted in evidence objects small enough to be brought into the courtroom. The acceptance of photographic evidence plus small objects cannot be successfully distinguished from jury views. If the jurors can be shown a small object or a photograph of an object of any size in the courtroom, why not permit them under proper supervision *to step outside to see a larger subject? Why not permit them, with efficient modern transportation, to travel a reasonable distance—under proper supervision, of course—for the same purpose?*
   H. Wendorf, "Some Views on Jury Views," 15 Baylor L.Rev. 379, 383 (1963) (footnotes omitted).

2. For example, in *Jones v. State,* 843 S.W.2d 487, 499 (Tex.Crim.App.1992), *cert. denied,* 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993), we held that the trial court did

not abuse its discretion in denying the defendant's request for a jury view because the information to be gained by the view was available from more convenient sources.

3. Once a trial court grants a request for a jury view, the court must implement appropriate procedural safeguards to ensure fundamental fairness to the accused as well as to protect the trial's truth-finding function. *See United States v. Gray,* 199 F.3d 547, 550 (1st Cir. 1999); *State v. Pauline,* 100 Hawai'i 356, 60 P.3d 306, 325–326 (2002); Wendorf, *supra,* note 1, at 393–396. What procedural safeguards are appropriate in any given case will depend on the particular circumstances of that case. Although we did not grant review of the question, it appears that the trial court in this case implemented appropriate procedural safeguards. That is, the trial court (1) attended and supervised the jury view; (2) instructed the jury before the view began that

We discern no abuse of discretion on the part of the trial court in permitting the jury view in this case. The State's request for the jury view was made in a timely fashion, and defense counsel was given an opportunity to object. Furthermore, on this record the trial court could have reasonably concluded that the jury view would be quick and easy to conduct and that the information to be gained by the jury view might be significant to the jury.

We hold that the court of appeals erred in holding that the trial court erred in permitting the jury view. Given our holding, we need not reach appellant's argument that the court of appeals erred in holding that the trial court's "error" was harmless.

We affirm the judgment of the court of appeals.

it was to remain quiet at the view, not conversing or asking questions; (3) gave the defendant and both counsel the opportunity to

be present at the view; and (4) enlisted the attendance of a court reporter to record what transpired at the view.