IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-05-00193-CV

 

Sue Walston,

                                                                      Appellant

v.

 

Larry Walston, et al.,

                                                                      Appellees

 

 

 



From the 19th District Court

McLennan County, Texas

Trial Court No. 92-3724-1

 



ORDER DENYING MOTIONS TO RECUSE 



 








          Appellant Sue Walston has filed motions to recuse Justice
Vance and Justice Reyna from further participation in this cause and “from
participation in any determination of her motion to recuse [the other
justice].”

          We set forth the controlling
principles for recusal motions in our April 19, 2006 order denying Walston’s
prior motions to disqualify or recuse the same two justices and the district
judge assigned to the panel.  See McCullough v. Kitzman, 50 S.W.3d 87
(Tex. App.—Waco 2001, order); see also Tex.
R. Civ. P. 18b(2); Tex. R. App.
P. 16.  

After receipt of the motions and prior to any
further proceeding in this case, Justices Vance and Reyna considered the
motions in chambers.  See Tex. R.
App. P. 16.3(b).  Neither found a reason to recuse himself and, under
Rule 16.3(b), certified the issue to the panel assigned to this case.  Id.; McCullough, 50 S.W.3d at 88.  The panel then decided that part of each
recusal motion which challenged the justice’s participation in determining the
motion to recuse the other justice.  The challenged justice did not sit with
the remainder of the panel, and the panel decided this part of each recusal
motion by a vote of the remaining members.  See id.    See Tex. R. App. P. 16.3; McCullough,
50 S.W.3d at 88.  In each instance, the remaining members of the panel found
that the justice under consideration should not be recused from participating
in the determination of the motion to recuse the other justice.

          The panel then considered that part of
each recusal motion which challenged the justice’s further participation in
this case.  The determination of whether recusal is necessary must be made on a
case‑by‑case, fact‑intensive basis.  McCullough, 50
S.W.3d at 89.  In each instance, the remaining members of the panel, sitting
without the challenged justice, found the motion without merit and found no
reason to recuse the justice under consideration.  Tex. R. App. P. 16.2, 16.3(b); Tex. R. Civ. P. 18b(2).  

Therefore, the motion to recuse Justice Vance
and the motion to recuse Justice Reyna are denied.

 

 

 

PER CURIAM

Before Justice Vance,

Justice
Reyna, and

Judge
Scoggins[1]

Motions denied

Order issued and filed
August 2, 2006

Do Not Publish









[1]
          The Honorable R. Al Scoggins,
Jr., Judge of the 378th District Court of Ellis County, sitting by assignment of
the Chief Justice of the Supreme Court of Texas pursuant to section 74.003(h)
of the Government Code.  See Tex.
Gov’t Code Ann. ' 74.003(h) (Vernon 2005).








s hands be kept cuffed in front of him and stated:

Now, I’m going to need help from
bailiffs and deputy bailiffs and security personnel which assist me in keeping
that particular fact as unobtrusive as possible.  What I would suggest is that
the defendant be brought in to the courtroom early, that he be seated during
the voir dire proceedings on my side of the counsel table, so that the counsel
table would be available to block at least some view of handcuffs.  And we’ll
do our best to avoid any overt display of restraints in the courtroom.  But,
nonetheless, my ruling will be that he remain handcuffed.  And law enforcement
may need to coordinate on how to get that done as unobtrusively as possible.

 

The trial judge then went back on
the record out of the presence of counsel and the defendant:

THE COURT: We’re back on the record in the case
styled State vs Andika.  I am dictating this statement to the court reporter
without the presence of counsel or the defendant and it affects a matter taken
up in chambers by both counsel with me before the pre-trial hearing this
morning.

 

Mr. Fulbright indicated that he
believed his client was unpredictable and he could not rely on his client to
avoid confrontational behavior in the courtroom even as against Mr. Fulbright,
his own attorney.  And I elected not to bring that matter up in the courtroom
while counsel, and at the time defendant were present, because I thought it
might additionally chill the relationship between Mr. Fulbright and his client
at a time when best representation is needed in the trial of the case.  I do
want the record to reflect that the conversation I had with counsel in chambers
had an impact on my decision to leave Mr. Andika handcuffed during the trial of
the case.  That will conclude this time.

 

After voir dire examination, the
trial judge issued a memorandum order:

On this date the Court conducted a
pre-trial hearing in the above-entitled and numbered case.  One issue raised
was that of courtroom security.  The State’s attorney made an offer of proof
that the defendant had engaged in making weapons and implements of escape
during his confinement.  The State further requested that Mr. Andika be
restrained by handcuffs during trial proceedings.  Additionally, during a
conference in chambers just prior to the pre-trial hearing, defense counsel,
Paul Fulbright, advised the Court and opposing counsel that his client was
intelligent, manipulative, and unpredictable; that he could not assure the
Court that his client would not refrain from confrontation or even violent
behavior; and that he (Mr. Fulbright) felt some personal risk from the
defendant.

 

The Court finds that the
preservation of security and the safety of those in the courtroom require that the
defendant remain handcuffed, as unobtrusively as possible.  The same was so
ordered in open court and security personnel directed to assist the court in
avoiding displays of the defendant in restraints.

 

During voir dire proceedings, it
appeared to the Court that the defendant made a conscious decision to display
his handcuffs, although he first kept these restraints under the counsel table
and effectively concealed the same from view.

 

The Court believes that any
prejudice to the defendant is offset by security concerns in this case.

 

We find that the trial judge did not
abuse his discretion in ordering Andika to wear handcuffs during the trial. 
Specific findings were made on the record to justify the use of handcuffs and to
ensure that the handcuffs would be unobtrusive.  See Long, 823 S.W.2d at
282-83.

We overrule issue one.

ISSUE TWO: MOTION IN LIMINE

Andika’s motion in limine to
prevent the State from eliciting evidence from Andika’s underlying forgery
charge was granted.  Andika argues that he was harmed when Detective Nanny
violated the motion in limine by testifying that he was assigned to the
fraud division of the Corsicana Police Department.  Andika’s counsel did not
object.

To preserve error for appellate
review, a timely and specific objection must be made and a ruling obtained.  Tex. R. App. P. 33.1(a)(1)(A).  The
granting of a motion in limine will not preserve a complaint of error.  Wilkerson
v. State, 881 S.W.2d 321, 326 (Tex. Crim. App.), cert. denied, 513 U.S. 1060, 115 S.Ct. 671, 130 L.Ed.2d 604 (1994).  Therefore, it is necessary that an
objection be made when the subject is raised during trial.  Id. (citing Gonzales
v. State, 685 S.W.2d 47, 50 (Tex. Crim. App.), cert. denied, 472 U.S. 1009, 105 S.Ct. 2704, 86 L.Ed.2d 720 (1985)).

Thus, we find that Andika did not
preserve this issue for appeal.  We overrule issue two.




ISSUE THREE: JURY VIEW OF CRIME SCENE

Andika argues that the trial judge
abused his discretion in refusing to allow the jury to view the crime scene. 
He argues that the availability of recordings was central to his defense of a
cover-up by jailers, and would disprove the element of his unauthorized absence
from jail.  The State argues that the trial judge did not abuse his discretion
in denying the jury to look at cameras at the crime scene because there is no
dispute as to whether cameras existed at the crime scene.

The question of whether to grant or
deny a request for a jury view rests within the trial court’s sound
discretion.  Jones v. State, 843 S.W.2d 487, 499 (Tex. Crim. App. 1992),
cert. denied, 507 U.S. 1035, 113 S.Ct. 1858, 123 L.Ed.2d 479 (1993).  A
trial court, in exercising its discretion to grant or deny a request for a jury
view, must consider the totality of the circumstances of the case, including,
but not limited to, the timing of the request for the jury view, the difficulty
and expense of arranging it, the importance of the information to be gained by
it, the extent to which that information has been or could be secured from more
convenient sources (e.g., photographs, videotapes, maps, or diagrams),
and the extent to which the place or object to be viewed may have changed in
appearance since the controversy began.  Mauricio v. State, 153 S.W.3d
389, 393 (Tex. Crim. App. 2005).  In addition, the trial court, in exercising
its discretion to grant or deny a request for a jury view, must give opposing
counsel an opportunity to be heard on the question.  Id.

We find that it is not clear from
the testimony of the officers that (1) the cameras even existed at the time of
Andika’s alleged escape, (2) that if the cameras did exist that day that they
were recording 24 hours a day, or (3) that any video tapes were made the day of
Andika’s alleged escape.  See id. at 393.  Thus, we find that the trial
judge did not abuse his discretion by denying the request for a jury view.  See
Jones, 843 S.W.2d at 499.  We overrule issue three.

ISSUE FOUR: PROSECUTOR’S COMMENTS ABOUT VIDEO
TAPE IN CLOSING ARGUMENT

 

Andika argues that he was harmed by
the prosecutor’s closing argument suggesting that a video tape was available to
the defense upon the filing of a proper motion.  He argues that a Motion for
Discovery was made, and the State denied the existence of any tapes.  Andika’s
counsel did not object to the prosecutor’s argument.

A defendant must show he objected
and pursued his objection to an adverse ruling in order to be permitted to
complain on appeal about an alleged erroneous jury argument.  Cockrell v.
State, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996).  Failure to object or
pursue an objection to an adverse ruling forfeits a defendant’s right to
complain about the jury argument on appeal.  Id.

Thus, we find that Andika forfeited
his right to complain about the prosecutor’s jury argument.  See id.  We
overrule issue four.

ISSUE FIVE: PERSONAL FEELINGS IN PROSECUTOR’S
CLOSING ARGUMENT

Andika argues that the prosecutor’s
statement in closing argument that he had personal feelings about this case
harmed him because it urged the jury to convict out of consideration for the
prosecutor’s personal feelings and suggested that the prosecutor had additional
information not available to the jury to warrant the conviction.  Andika’s
counsel did not object to the prosecutor’s argument.

We find that Andika forfeited his
right to complain about the prosecutor’s jury argument.  See id.  We
overrule issue five.

ISSUE SIX: LEGAL SUFFICIENCY OF ENHANCEMENT FOR
FEDERAL CONVICTION

 

Andika argues that the evidence is
legally insufficient to establish that the federal conviction in the
enhancement paragraph was a felony conviction because the offense carries a
punishment range that could result in a fine only, which would be a misdemeanor
in Texas.

The State argues that the prior
federal conviction was a felony in the federal system and was sufficient to
establish that Andika has a prior felony conviction for enhancement purposes.

Whether a prior conviction is a
felony is a question of law; it is not subject to a “legal sufficiency” review.

A federal conviction can be used for
enhancement in Texas if the federal conviction carries confinement in a
penitentiary as a possible punishment.  Ex parte Blume, 618 S.W.2d 373,
375-76 (Tex. Crim. App. 1981) (relying on Texas Penal Code section 12.41 for
the classification of offenses outside the Texas Penal Code).  Penal Code
section 12.41 states that a conviction not obtained from a prosecution under
this code shall be classified as a “felony of the third degree” if imprisonment
in a penitentiary is affixed to the offense as a possible punishment.  Tex. Pen. Code Ann. § 12.41(1) (Vernon 2003).

Andika was convicted of the federal
offense of Uttering Counterfeit Obligations or Securities:

Whoever, with intent to defraud, passes, utters,
publishes, or sells, or attempts to pass, utter, publish, or sell, or with like
intent brings into the United States or keeps in possession or conceals any
falsely made, forged, counterfeited, or altered obligation or other security of
the United States, shall be fined under this title or imprisoned not more than
20 years, or both.

 

18 U.S.C.A. § 472 (West Supp. 2005).  Because
the federal offense for which Andika was convicted carried confinement in the
penitentiary as a possible punishment, we find no error in the trial court’s
determination that this conviction could be used for punishment-enhancement
purposes.  See Ex part Blume, 618 S.W.2d at 375-76.

We overrule issue six.

ISSUE SEVEN: OVERBROAD AND VAGUE PUNISHMENT RANGE FOR FEDERAL CONVICTION IN ENHANCEMENT

 

Because the federal conviction in Andika’s
enhancement paragraph had a punishment range of a fine only or up to 20 years
in prison, he argues that this range is so broad and vague that it makes it
impossible to classify it as a felony or misdemeanor for purposes of
enhancement.  He argues this was a denial of due process.  The State argues
that Andika’s argument is without merit.

The United States Code classifies
Andika’s offense as a Class C felony because the maximum term of imprisonment
authorized is less than twenty-five years but ten or more years.  18 U.S.C.A. §
3359(a)(3) (West 2000).  We have already decided that for purposes of
enhancement in Texas, Andika’s federal conviction is a felony based on the
possible penitentiary punishment.  Thus, it is irrelevant whether the federal
classification statute is overbroad and/or vague.

We overrule issue seven.

ISSUE EIGHT: FACTUAL SUFFICIENCY OF EVIDENCE TO
SHOW SAME PERSON

Andika argues that the evidence is
factually insufficient to prove that Andika is the same person convicted in the
cases alleged in the enhancement paragraph.  He argues that the purported
fingerprint expert, who was called to connect him to the pen packets for the
prior felony convictions, was not established as an expert on fingerprint
identification.

The State argues that the expert was
qualified to testify as a fingerprint expert.

We conduct factual sufficiency
reviews of the evidence of an offense—not of all disputed fact issues.  See
Hanks v. State, 137 S.W.3d 668, 670 (Tex. Crim. App. 2004).  Thus, we
cannot review the factual sufficiency of the enhancement to Andika’s
punishment.  See id.  However, we will review the evidentiary issue of
whether the State’s witness was qualified as a fingerprint expert.

A prior conviction alleged for
enhancement may be established by certified copies of a judgment and sentence
and authenticated copies of the Texas Department of Criminal Justice records,
including fingerprints, supported by expert testimony matching them to the
known prints of the defendant.  Beck v. State, 719 S.W.2d 205, 209 (Tex.
Crim. App. 1986).  Rule of Evidence 702 states: “[i]f scientific, technical, or
other specialized knowledge will assist the trier of fact to understand the
evidence or to determine a fact in issue, a witness qualified as an expert by
knowledge, skill, experience, training, or education may testify thereto in the
form of an opinion or otherwise.”

The burden of establishing a
witness’s qualifications lies with the party offering the testimony.  Matson
v. State, 819 S.W.2d 839, 851 (Tex. Crim. App. 1991).  No rigid formula
exists for determining whether a particular witness is qualified to testify as
an expert.  Id. at 851 n.10.  Consequently, the question of whether a
witness offered as an expert possesses the required qualifications rests
largely in the trial court's discretion.  Wyatt v. State, 23 S.W.3d 18,
27 (Tex. Crim. App. 2000); see also Tex.
R. Evid. 702.  Absent an abuse of discretion, the trial court's decision
to admit or exclude testimony will not be disturbed.  Wyatt, 23 S.W.3d
at 27.

Andika’s attorney objected to the
qualifications of Bob McQuary as a fingerprint expert.  Testimony by McQuary on
direct examination by the State and voir dire by Andika’s attorney evidenced
the following qualifications: (1) independent civilian consultant in the area
of fingerprint identification for approximately 15 years; (2) engages in
independent fingerprint expert type work about 25-30 times per year; (3)
initial training was on-the-job training with the Navarro County Sheriff’s
Department; (4) attended the Department of Public Safety training academy and
took a one-week course in fingerprint identification; (5) attended a two-week
course in advanced fingerprint identification taught by the Department of
Public Safety using the FBI training material; (6) is a certified instructor
for the Texas Commission on Law Enforcement Education and Standards and teaches
basic and advanced fingerprint identification and advanced crime scene
investigation; (7) has testified in court on many occasions as a fingerprint
expert; and (8) has not received any training by the FBI.  The judge overruled
Andika’s objection that McQuary was not qualified.

Based on the foregoing recitals, we
find that the trial court did not abuse its discretion in permitting McQuary to
testify as a fingerprint expert.  See Tex.
R. Evid. 702; Matson, 819 S.W.2d at 851; Wyatt, 23 S.W.3d
at 27.

We overrule issue eight.




CONCLUSION

Having overruled all of Andika’s
issues, we affirm the judgment.

 

 

BILL VANCE

Justice

 

Before Chief Justice
Gray,

Justice
Vance, and

Justice
Reyna

Affirmed

Opinion delivered and
filed June 22, 2005

Do not publish 

[CRPM]








 









    [1]       There
was testimony that they had changed identification.





    [2]       In
Long, the Court found that the trial judge did not adequately make
specific findings of fact and therefore abused his discretion.  Long, 823
S.W.2d at 283.  However, because there was no evidence that the jury actually
saw the defendant’s restraints, the Court found that the defendant was not
harmed or prejudiced.  Id.