

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00025-CR

Frances Rosalez **FORD**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2011CR2986
Honorable Dick Alcala, Judge Presiding

Opinion by:    Marialyn Barnard, Justice

Sitting:       Karen Angelini, Justice
               Marialyn Barnard, Justice
               Rebeca C. Martinez, Justice

Delivered and Filed:  April 1, 2015

AFFIRMED AS MODIFIED

Frances Rosalez Ford pled guilty to the charge of felony murder and was sentenced to life imprisonment.  On appeal, Ford contends the trial court erred in allowing a jury view of the vehicles involved in the automobile collision resulting in the complainant's death.  Ford also challenges the assessment of attorney's fees against her.  We modify the judgment to delete the assessment of attorney's fees, and we affirm the judgment as modified.

## BACKGROUND

Ford was driving the wrong way on the northbound lanes of a highway when she collided with a vehicle driven by Lawrence Belcher. Belcher died at the scene. Ford was taken to the hospital. The blood sample drawn by the hospital showed Ford's blood alcohol content to be .279, while the sample drawn three hours later at the request of law enforcement showed her blood alcohol content to be .19. Because Ford had two prior DWI convictions, she was charged with felony murder, with the third DWI being the underlying felony.[1] Ford pled guilty, and a jury assessed Ford's sentence at life imprisonment. Ford appeals.

## JURY VIEW AND UNFAIR PREJUDICE

In her first two issues, Ford contends the trial court erred in allowing the jury to view the vehicles involved in the collision. At trial, Ford objected to the jury view on two grounds: (1) the jury view was unduly prejudicial; and (2) the vehicles had been at the impound lot for three years and their condition had changed. The State responded the photographs taken at the scene did not adequately show the damage to the vehicles, and the jury needed to view the manner in which the vehicles were positioned at the time of the collision to understand "how the impact happened." The State explained the vehicles separated after impact, so their position at the time of impact was not shown in the photographs taken at the scene. The State further explained the vehicles would be brought to the courthouse, and little time would be needed for the jury view. The State did not anticipate any questions being asked while the jury viewed the vehicles, but the jury would quickly walk around the vehicles to view the damage. The State argued it would not be "unduly prejudicial

---

[1] A person commits the offense of felony murder if he commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(3) (West 2011).

to see what type of damage was actually caused — that caused this individual to be killed." The trial court overruled Ford's objections.

1.    Jury View During Trial

After several other witnesses who saw Ford driving or the resulting collision testified, Sergeant Scott Foulke testified regarding the steps taken during the investigation of the scene, and a diagram was introduced into evidence showing the area in which the impact was determined to have occurred and the location of the vehicles after the collision. The investigation did not show that either of the vehicles braked prior to impact. Sergeant Foulke stated that the car traveling north would have reduced visibility because of a hill and a curve. Sergeant Foulke estimated that the car traveling in the right direction would have had approximately 2.8 to 3.2 seconds to react. The State then approached the bench and requested the jury view. The trial court instructed the jury:

> THE COURT:  All right.  Okay.
>     Members of the jury, at this time, we're going to take you outside.  The bailiffs — you are to follow them and stay with them at all times to do what's called a jury view of the vehicles.
>     During that time, you are to observe the vehicles once we get outside. You're not to converse or comment at all with each other or with anyone else for that matter while you're doing that.  Just make your view.  Don't — don't touch anything.  Just view it.  And when you've completed that, then you'll be brought back in.

2.    Jury View

"[T]he question of whether to grant or deny a request for a jury view rests 'within the trial court's [sound] discretion.'" *Mauricio v. State*, 153 S.W.3d 389, 393 (Tex. Crim. App. 2005) (quoting *Jones v. State*, 843 S.W.2d 487, 499 (Tex. Crim. App. 1992)).  A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Lyles v. State*, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993); *Reyes v. State*, 274 S.W.3d 724, 729 (Tex. App.—San Antonio

2008, pet. ref'd). A trial court does not abuse its discretion unless its ruling "falls outside the zone of reasonable disagreement." *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).

In exercising its discretion to grant or deny a request for a jury view, the trial court must consider the totality of the circumstances of the case, including, but not limited to: (1) the timing of the request for the jury view; (2) the difficulty and expense of arranging it; (3) the importance of the information to be gained by it; (4) the extent to which that information has been or could be secured from more convenient sources (*e.g.,* photographs, videotapes, maps, or diagrams); and (5) the extent to which the place or object to be viewed may have changed in appearance since the controversy began. *Mauricio*, 153 S.W.3d at 393. In addition, the trial court must provide opposing counsel an opportunity to be heard on the question. *Id*.

With regard to the timing of the request, the State filed a notice of its intent to have the jury view evidence outside the courtroom on December 10, 2013. Before trial commenced on December 17, 2013, the trial court considered and granted the State's motion. Therefore, the record reflects that the request for the jury view was made in a timely fashion. In addition, the vehicles were brought to the courthouse; therefore, the arranging of the jury view was not difficult, and the trial court could have concluded the jury view would be quick. In responding to defense counsel's objections, the State explained the importance of the information to be gained, asserting the photographs taken at the scene did not adequately show the damage to the vehicles or the manner in which the vehicles collided. Finally, although defense counsel asserted the vehicles had been at the impound lot for three years, defense counsel did not establish that the condition of the vehicles had changed other than with regard to possible dust and fingerprints. Accordingly, based on the record presented, we cannot conclude the trial court abused its discretion in granting the jury view.

### 3. Unfair Prejudice

Ford also objected that the jury view would be unduly prejudicial. The State contends this court should not consider whether the jury view should be excluded under Rule 403 as a separate issue; however, the State cites no support for its contention. In the Houston court's decision in *Mauricio*, the appellant also raised a Rule 403 issue. *See Mauricio v. State*, 104 S.W.3d 919, 920 n.1 (Tex. App.—Houston [14th Dist.] 2003), *aff'd*, 153 S.W.3d 389 (2005). The Houston court explained that it was not addressing the Rule 403 issue because it was not adequately briefed. *Id*. Because we are not convinced that a Rule 403 objection to a jury view cannot be made in addition to an objection based on the law regarding jury views, we address Ford's issue.

Rule 403 of the Texas Rules of Evidence provides, in pertinent part, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." TEX. R. EVID. 403. In conducting a Rule 403 analysis, the following factors are considered: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004). "Evidence is unfairly prejudicial when it has 'an undue tendency to suggest that a decision be made on an improper basis.'" *Pawlak v. State*, 420 S.W.3d 807, 809 (Tex. Crim. App. 2013) (quoting *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g)). "All evidence is prejudicial to one party or the other — it is only when there is clear disparity between the degree of prejudice of the offered evidence and its probative value that Rule 403 is applicable." *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012). Similar to a trial court's ruling on jury views, we review a trial court's ruling under Rule 403 for an abuse of discretion. *Pawlak*, 420 S.W.3d at 810.

As discussed in reviewing the jury view issue, the probative value of the evidence was that it showed the actual damage to the vehicles and the manner in which the vehicles collided. Although photographs of the vehicles at the scene were introduced into evidence, the photographs were dark, and the positioning of the vehicles in the photographs made it difficult to visualize the manner in which the two vehicles collided. Similarly, although the diagram showed the area of impact and location of the vehicles after impact, the State wanted the jury to view the vehicles as they were positioned at impact to understand the nature of the collision and the resulting damage. Although the record does not reflect the exact amount of time it took to conduct the jury view, the vehicles were brought to the courthouse, and the trial court's admonishments made it clear that the jury view would be quickly completed. Finally, with regard to the potential to impress the jury in some irrational, yet indelible, way, Ford argues in her brief that "the view of the hulks 'in the flesh' had the tendency to indelibly impress the jury on the violence necessary to achieve the damage." The photographs and testimony that were admitted into evidence, however, should already have impressed upon the jury the violent nature of the collision. Viewing the positioning of the vehicles would only enable the jury to visualize the manner in which they impacted. Accordingly, having considered the Rule 403 factors, we cannot conclude the trial court abused its discretion in overruling Ford's Rule 403 objection.

4.      Harmless Error

Even if we are incorrect in holding the trial court did not abuse its discretion in allowing the jury view, any error in allowing the jury view would not require a reversal unless it affected Ford's substantial rights. TEX. R. APP. P. 44.2. "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Cole v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). In conducting this harm analysis, we consider "everything in the record" including other testimony and evidence before the jury and "the

character of the alleged error and how it might be considered in connection with other evidence in the case." *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). This court will not overturn Ford's conviction for non-constitutional error if this court, "after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In addition to the evidence that Ford was driving the wrong way down the highway and subsequent testing showed her blood alcohol content to be .279, far over the legal limit of 0.08, the jury also heard the testimony of a truck driver who paced Ford's vehicle as he traveled in the southbound lanes, honking his air horn and flashing his lights in an effort to get Ford's attention for over three miles. Furthermore, the jury heard evidence that Ford was arrested for a first DWI in February of 2008. Although Ford could have been convicted of a felony because her ten-year-old daughter was in the vehicle, she was convicted only of a misdemeanor and placed on probation in March of 2009. In June of 2008, Ford was arrested for a second DWI, and was also placed on probation for that offense in August of 2010. Two months later, in October of 2010, she caused the fatal collision that resulted in Belcher's death.

In addition to the foregoing evidence, the jury also heard Ford's own testimony. Ford testified that she only had one drink that night and believed someone placed a drug in her drink; however, the toxicology results did not support her belief. Ford testified she was not aware the trial court previously ordered her not to drive and offered a series of excuses for the reason her vehicle did not contain the ignition interlock system the court previously ordered. Because the jury heard evidence that Belcher had a blood alcohol level of .13, Ford was asked if she believed the alcohol in Belcher's system contributed to the accident, and she responded that she did although she did not blame Belcher for the accident. Ford also testified that although she was driving the wrong way, she believed she was "driving right." Because Ford stated she was requesting

leniency, the prosecutor asked, "Ms. Ford, do you acknowledge that you've already been shown leniency [with regard to the two prior DWI convictions]?" Ford responded, "No."

Having examined the record as a whole, even if we assume the trial court abused its discretion in allowing the jury view, we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson*, 967 S.W.2d at 417. Accordingly, any error by the trial court in allowing the jury view was harmless.

### ATTORNEY'S FEES

In her third issue, Ford contends the evidence is legally insufficient to support the trial court's assessment of attorney's fees against her, noting the record reflects that she had appointed counsel at trial and on appeal. *See Vogt v. State*, 421 S.W.3d 233, 246 (Tex. App.—San Antonio 2013, pet. ref'd); *Smith v. State*, 421 S.W.3d 161, 165 (Tex. App.—San Antonio 2013, no pet.) The State concedes the attorney's fees were improperly assessed. Accordingly, Ford's third issue is sustained, and the trial court's judgment is modified to delete the assessment of attorney's fees.

### CONCLUSION

The trial court's judgment is modified to delete the assessment of attorney's fees. The trial court's judgment is affirmed as modified.

Marialyn Barnard, Justice

DO NOT PUBLISH