499·15

PD - _____

ORIGINAL

IN THE TEXAS COURT OF CRIMINAL APPEALS

FRANCES ROZALES FORD

Appellant

vs.

THE STATE OF TEXAS

Appellee

RECEIVED IN
COURT OF CRIMINAL APPEALS

JUN 26 2015

Abel Acosta, Clerk

From The Fourth Court of Appeals
Cause No. 04-14-00025-CR

Appeal From The 227th Judicial District Court
Bexas County, Texas
No. 2011-CR-2986

APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

FILED IN
COURT OF CRIMINAL APPEALS

JUN 26 2015

Abel Acosta, Clerk

Frances Rozales Ford, Pro Se
TDCJ-CID # 01916749 / Crain Unit
1401 State School Rd.,
Gatesville, TX 76599

## STATEMENT REGARDING ORAL ARGUMENT

Appellant hereby waives oral argument due to her pro se status in this petition for discretionary review (PDR).

Appellant's PDR is self-sufficient to allow the Court to make an adequate decision relevant to the issues raised here.

Pursuant to TEX.R.APP.PRO. 68.4(a), the identities of the parties and counsel are as follows:

TRIAL JUDGE:

    HON. DICK ALCALA,
    Senior District Judge sitting by assignment,
    C/O Fourth Administrative Judicial Region,
    100 Dolorosa St.,
    San Antonio, Texas 78205

==============================

APPELLANT/PETITIONER:

    Frances R. Ford, pro se
    TDCJ-CID # 01916749
    Christina Melton Crain Unit
    1401 State School Rd.,
    Gatesville, TX 76599

==============================

TRIAL COUNSEL:

    MONICA GUERRERO
    5150 Broadway, Suite 114
    San Antonio, TX 78209

==============================

STATE OF TEXAS:

    SUSAN D. REED, DISTRICT ATTORNEY
    BEXAR COUNTY, TEXAS
    DAVID WARREN HENDERSON and ERIC JOHN FUCHS,
    Assistant District Attorneys
    Paul Elizondo Tower,
    101 Nueva St. Suite 310,
    San Antonio, TX 78204

==============================

COUNSEL ON DIRECT APPEAL:

    MICHAEL D. ROBBINS
    Assistant Public Defender
    Paul Elizondo Tower,
    101 W. Nueva St. Suite 310
    San Antonio, TX 78704

## TABLE OF CONTENTS

TABLE OF CONTENTS........................................................iii

STATEMENT REGARDING ORAL ARGUMENT.........................................i

IDENTITY OF PARTIES AND COUNSEL..........................................ii

INDEX OF AUTHORITIES.....................................................iv

STATEMENT OF THE CASE.....................................................1

STATEMENT OF PROCEDURAL HISTORY..........................................1

GROUNDS FOR REVIEW.......................................................2

ARGUMENT.................................................................3

    1. Whether the court of appeals erred in rejecting
       Appellant's issues related to the trial court's
       rulings relevant to the [jury view] of the two
       crash vehicles involved in the accident...................3

    2. Whether the jury view of the two crash vehicles
       was more prejudicial than probative.......................3

DEFENSE OBJECTIONS.......................................................3

JURY VIEWS, STANDARD OF REVIEW...........................................4

THE 403 RULE ERROR.......................................................6

APPLY THE SHUFFIELD FACTORS..............................................8

CONCLUSION...............................................................9

PRAYER..................................................................10

CERTIFICATE OF SERVICE..................................................10

# INDEX OF AUTHORITIES

Jones v. State, 843 S.W.2d 487 (Tex.Crim.App. 1992)..............4

Martinez v. State, 327 S.W.3d 727 (Tex.Crim.App. 2010)..........4

Mauricio v. State, 153 S.W.3d 389 (Tex.Crim.App. 2005).....4,5,6

Oprean v. State, 201 S.W.3d 724 (Tex.Crim.App. 2006)............7

Sanders v. State, 422 S.W.3d 809 (Tex.App.-Dallas 2014, no pet.)
................................................................7

Shuffield v. State, 189 S.W.3d 782 (Tex.Crim.App. 2006).......7,8

iv.

## STATEMENT OF THE CASE

This was a trial on punishment only, following a guilty plea to the jury. Appellant ("Ford") was charged by indictment with the offense of felony murder, TEX.PENAL CODE § 19.02(b)(3), Cause No. 2011-CR-2986). (CR,12). A jury was worn (RR2, 175), and Ford pleaded guilty. (RR 3, 10). Ford elected that the jury assess punishment. (CR, 115). Following the presentation of evidence and argument of counsel, the jury found Ford guilty of murder, as directed by the trial court, and assessed a LIFE sentence. (CR, 125-126; RR 5, 41-42). The trial court certified Ford's right to appeal. (CR, 118). Notice of Appeal was timely filed. (CR, 130, 138). The trial court appointed the Appellate Public Defender's Office of Bexar County to represent Ford. (CR, 136). The appellate brief was timely filed.

## STATEMENT OF PROCEDURAL HISTORY

On April 1, 2015, the Fourth Court of Appeals affirmed the judgment with a modification to delete the assessment of attorney's fees. A copy of the judgment is attached as Appendix A.

Ford asked this Court for an extension of time to file her PDR. The extension was granted until June 30, 2015. Ford has placed this PDR in the United States Mail service on June 29, 2015. Therefore, this PDR is timely.

(1)

GROUNDS FOR REVIEW

1.        Whether the court of appeals erred in rejecting
          Appellant's issues related to the trial court's
          rulings relevant to the [jury view] of the two
          crash vehicles involved in the accident.


2.        Whether the jury view of the two crash vehicles
          was more prejudicial than probative.
==========================

GROUND ONE: The trial court erred accordingly when it overruled

Appellant's objection to the jury view of the vehicles involved

in the accident, because there was no assurance that the vehicles

did not change in appearance between the time of the accident

and the time of the jury view. (RR 3, 7).


GROUND TWO: The trial court erred when it overruled Appellant's

objection to the jury view of the vehicles involved in the car

accident, because the prejudicial effect of the jury view —

[substantially] outweighed its probative value. (RR 3, 7).

1.    Whether the court of appeals erred in rejecting Appellant's issues related to the trial court's rulings relevant to the [jury view] of the two crash vehicles involved in the accident.

2.    Whether the jury view of the two crash vehicles was more prejudicial than probative.

These two grounds for review are argued together, with sub-points, because they both apply to the same set of facts.

On December 10, 2013, six days prior to jury selection, the State filed a belated Notice of Intent to Have the Jury View Evidence Outside the Courtroom. (CR, 113-114). The notice stated that the jury view of the two vehicles would be "highly probative to the crash dynamics," and that [no] photos were available "showing the vehicles as the would have been positioned heading into impact with each other." The proposed jury view was to be held in the closed portion of South Main Avenue , between the Bexar County Courthouse and Justice Center.

The trial court conducted a hearing on the notice, but [after] the jury was selected and prior to the presentation of any evidence. The hearing was held outside the presence of the jury.

DEFENSE OBJECTIONS TO THE JURY VIEW

Ford's attorney raised two objections relevant to the jury view: (1) it cannot be ascertained how the vehicles appeared prior to the crash, and their appearances have changed in the three years (plus) since the crash (RR3, 5-6); (2) the proposed

(3)

view "shows unfair prejudice to [Ms. Ford] as opposed to the probative value." (RR 3, 5-6).

The trial court overruled the defense objections. (RR 3, 7). During the actual trial, the jury was admonished by the court regarding the view of the staged vehicles. The jury was then taken outside the courtroom to view the vehicles. Defense counsel did not renew her objection, but stood silent, and did not waive the objection by saying, "No objection." (RR 3, 88-89).

## JURY VIEWS, STANDARD OF REVIEW

The term "view," as understood in law, refers to the act or process by which the trier of fact ventures forth to observe places or objects that are material to litigation, but that cannot reasonably be brought, or satisfactorily reproduced, within the courtroom. If the trier of fact is a jury, the [view] is properly termed a "jury view." Mauricio v. State, 153 S.W.3d 389, 392 (Tex.Crim.App. 2005). The decision whether to grant or deny a jury view rests within the sound discretion of the trial court. Id. at 393 (citing Jones v. State, 843 S.W.2d 487, 499 (Tex.Crim.App. 1992)). A court abuses its discretion when its ruling does not fall within the zone of reasonable disagreement. Martinez v. State, 327 S.W.3d 727, 736 (Tex.Crim.App. 2010).

In exercising its discretion regarding a jury view, the trial court "must consider the totality of the circumstances of the case, but not limited to, the timing of the request for

(4)

the jury view, the difficulty and expense of arranging it, the importance of the information to be gained by it, the extent to which the information has been or could be secured from more convenient sources (e.g., photographs, videotapes, maps, or diagrams), and the extent to which the place or object to be viewed may have changed in appearance since the controversy began." Mauricio, 153 S.W.3d at 393. The trial court must also implement appropriate safeguards to insure fundamental fairness to the accused, as well as to protect the trial's truth-finding function. Id., n.3.

**THERE WAS OTHER, MORE RELIABLE EVIDENCE USED THAT WAS MORE CLEAR AND [ACCURATE] THAN THE [STAGED VEHICLES VIEWED BY THE JURY.**

The accident investigator in this case was SAPD Sergeant Scott Foulke. Sergeant Foulke used a Sokkia Total Station. (RR 3, 78). This particular device is a robotic measuring system that permits accurate measurements of an accident scene. It is accurate to within 1/16th of an inch from a mile away. (RR 3, 79). This device is similar to surveying equipment, and allows the user to create a precise scaled diagram. (RR 3, 77). Sergeant Foulke's scaled diagram was admitted into evidence without any objections from either side. (RR 3, 81; RR 6, SX20). The diagram, plus Sergeant Foulke's testimony, provided authentic crash scene dynamics immediately after the crash itself. (RR 6, SX17). The two actual vehicles, hauled to the viewing site at the courthouse (more than three years after the fact) and staged for the jury view in broad daylight, were not authentic conditions that by any means replicated U.S. 281 at night, and were certainly not

(5)

CAN THIS COURT REASONABLY CONCLUDE THAT THE TWO VEHICLES HAD NOT [CHANGED] IN THE 38 MONTHS [AFTER] THE CRASH THAT OCCURRED EARLY IN THE MORNING OF OCTOBER 14, 2010)? (RR 3, 16).

Among the factors a court should consider in exercising its discretion in permitting a view is the extent to whcih the item viewed may have changed since the time the controversy began. Mauricio, 153 S.W.3d at 393. This was one of the two objections by Ford as to the jury view. (RR 3, 5-8). Here, the controvery began on October 14, 2014. (RR 3, 16); the jury view occurred over three years [afterwards] on December 17, 2013. (RR 3, 1, 88-89)). There is no evidence describing how the two vehicles looked during the jury view. There are 11 photographs in evidence showing the vehicles on the [night] of the accident. (RR 6, SX4-SX11, SX16 & SX17) versus the [daylight] jury view.

These photographs, without exception, show that the violence of the crash caused the vehicles to partially disintegrate. Glass, metallic debris, and even a tire from one vehicle were strewn all over the vicinity, including between the two vehicles. This is apparent in State's Exhibit 17, which shows a large debris field. This large debris filed could not (and was not) reconstructed for the jury view. Even if both vehicles could have remotely been preserved (without intention alteration), they could not have looked like they did in the actual crash scene photographs versus the [staged] jury view.

**THE PREJUDICE HERE VERSUS THE PROBATIVE VALUE OF THE JURY VIEW**

A. <u>Rule 403 Error</u>

Admission of evidence over a Rule 403 objection is reviewed

(6)

on an abuse of discretion standard. A court abuses its discretion when its ruling falls outside the zone of reasonable disagreement. Oprean v. State, 201 S.W.3d 724, 726 (Tex.Crim.App. 2006). Additionally, error may not be predicated on a ruling admitting evidence unless a [substantial] right of the party is affected, and unless the party timely makes a proper objection. TEX.R.EVID. 103(a).

TEX.R.EVID. 403 provides as follows:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence.

=====================

The appellate courts will consider four nonexclusive factors in considering whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice: (1) the probativeness of the evidence; (2) the potential of the evidence to impress the jury in some irrational , but nevertheless indelible way; (3) the time the proponent needs to develope the evidence; and (4) the proponent's need for the evidence. Shuffield v. State, 189 S.W.3d 782, 787 (Tex.Crim.App. 2006), cert. denied, 549 U.S. 1056)2006). TEX.CODE CRIM.PRO. art. 37.07, § 3(a) governs the admission of punishment evidence. However, Rule 403 also applies at the punishment phase of a trial, and otherwise admissible punishment evidence may still be excluded under the rule. Sanders v. State, 422 S.W.3d 809, 814 (Tex.App.- Dallas 2014, no pet.).

(7)

## APPLYING THE FOUR SHUFFIELD FACTORS TO THE ISSUE HERE

When the four Shuffield factors are applied here, it is certain that the trial court abused its discretion by overruling Ford's objection to the jury view. While it may be said that the jury view was probative of the conditions of the two vehicles some [three] years and two months [after] the accident. However, that does not translate into probativeness of any trial issue. According to the Notice of Intent, the State's reasons for the view was that it was "highly probative of crash dynamics, and no physical pictures were available [showing] the vehicles as they would have been positioned heading into the impact." (CR, 114).

The actual reason for the jury view was to permit the jury to look at the vehicles in their post-crash state. This was not the actual condition of the vehicles after the crash. Post-damage was inflicted on the vehicles in order to removed the deceased in one vehicle. That can be seen in State's Exhibit 17, a color photo of the vehicles at the site of the accident. However, the view of the hulks "in the flesh" had the tendency (and indeed, did) indelibly impress upon the jury the violence necessary to achieve the damage. This tendency was irrational because [what] the jury saw was not the actual immediate results, or the [pre]-crash vehicles. The results were available in the in the form of the multiple photographs already in evidence.

Finally, the record is silent on how long the jury view took, and there is no way to apply the [third] element in this

(8)

case. Certainly, the State had no need at all for the jury view. Sergeant foulkes described the actual crash dynamics at length and in remarkable detail. (RR 3, 77-88). His expertly scaled diagram and the various photographs of the aftermath spoke a volume to crash dynamics. The staged jury view simply did not. The trial court erred in overruling the defense objection to the jury view.

## Conclusion

The Shuffield factors weigh heavily in favor of Ford. The error argued above was non-constitutional. Therefore, the error is reversible only if this Court determines that Ford's rights were substantially effected. TEX.R.APP.PRO. 44.2(b). It can reasonably concluded that the jury view had a substantial, indeed overwhelming influence, because the jury's setencing was assessed at LIFE. The unnecessary jury view of the [gruesome],emotionally charged remains of the two vehicles clearly, indelibly insinuated itself into the minds of the jurors and substantially contributed to the verdict of LIFE. This judgment must be reversed and a new punishment trial should be ordered. TEX.CODE CRIM.PRO. art. 44.29(b).

**PRAYER**

Ford respectfully requests this Court to grant this PDR.

Respectfully submitted,

Frances R. Ford, Appellant pro se
TDCJ-CID # 01916749 / Crain Unit
1401 State School Rd.,
Gatesville, TX 76599

**Certificate of Service**

I hereby certify that I have mailed a carbon copy of the above PDR to the parties noted in the Parties and Counsel, by placing the same in the United States Mail, first-class postage prepaid, on this the 29th day of June, 2015.

Frances R. Ford, Appellant

(10)

APPENDIX A.

COURT OF APPEALS' OPINION

FORD v. STATE, No. 04-14-00025-CR,(April 1, 2015)



# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-14-00025-CR

Frances Rosalez **FORD**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 227th Judicial District Court, Bexar County, Texas
Trial Court No. 2011CR2986
Honorable Dick Alcala, Judge Presiding

Opinion by:   Marialyn Barnard, Justice

Sitting:   Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice

Delivered and Filed:  April 1, 2015

AFFIRMED AS MODIFIED

Frances Rosalez Ford pled guilty to the charge of felony murder and was sentenced to life imprisonment.  On appeal, Ford contends the trial court erred in allowing a jury view of the vehicles involved in the automobile collision resulting in the complainant's death.  Ford also challenges the assessment of attorney's fees against her.  We modify the judgment to delete the assessment of attorney's fees, and we affirm the judgment as modified.

## BACKGROUND

Ford was driving the wrong way on the northbound lanes of a highway when she collided with a vehicle driven by Lawrence Belcher. Belcher died at the scene. Ford was taken to the hospital. The blood sample drawn by the hospital showed Ford's blood alcohol content to be .279, while the sample drawn three hours later at the request of law enforcement showed her blood alcohol content to be .19. Because Ford had two prior DWI convictions, she was charged with felony murder, with the third DWI being the underlying felony.[1] Ford pled guilty, and a jury assessed Ford's sentence at life imprisonment. Ford appeals.

## JURY VIEW AND UNFAIR PREJUDICE

In her first two issues, Ford contends the trial court erred in allowing the jury to view the vehicles involved in the collision. At trial, Ford objected to the jury view on two grounds: (1) the jury view was unduly prejudicial; and (2) the vehicles had been at the impound lot for three years and their condition had changed. The State responded the photographs taken at the scene did not adequately show the damage to the vehicles, and the jury needed to view the manner in which the vehicles were positioned at the time of the collision to understand "how the impact happened." The State explained the vehicles separated after impact, so their position at the time of impact was not shown in the photographs taken at the scene. The State further explained the vehicles would be brought to the courthouse, and little time would be needed for the jury view. The State did not anticipate any questions being asked while the jury viewed the vehicles, but the jury would quickly walk around the vehicles to view the damage. The State argued it would not be "unduly prejudicial

---

[1] A person commits the offense of felony murder if he commits or attempts to commit a felony, other than manslaughter, and in the course of and in furtherance of the commission or attempt, or in immediate flight from the commission or attempt, he commits or attempts to commit an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE ANN. § 19.02(b)(3) (West 2011).

to see what type of damage was actually caused — that caused this individual to be killed." The trial court overruled Ford's objections.

### 1. Jury View During Trial

After several other witnesses who saw Ford driving or the resulting collision testified, Sergeant Scott Foulke testified regarding the steps taken during the investigation of the scene, and a diagram was introduced into evidence showing the area in which the impact was determined to have occurred and the location of the vehicles after the collision. The investigation did not show that either of the vehicles braked prior to impact. Sergeant Foulke stated that the car traveling north would have reduced visibility because of a hill and a curve. Sergeant Foulke estimated that the car traveling in the right direction would have had approximately 2.8 to 3.2 seconds to react. The State then approached the bench and requested the jury view. The trial court instructed the jury:

> THE COURT: All right. Okay.
> Members of the jury, at this time, we're going to take you outside. The bailiffs — you are to follow them and stay with them at all times to do what's called a jury view of the vehicles.
> During that time, you are to observe the vehicles once we get outside. You're not to converse or comment at all with each other or with anyone else for that matter while you're doing that. Just make your view. Don't — don't touch anything. Just view it. And when you've completed that, then you'll be brought back in.

### 2. Jury View

"[T]he question of whether to grant or deny a request for a jury view rests 'within the trial court's [sound] discretion.'" *Mauricio v. State*, 153 S.W.3d 389, 393 (Tex. Crim. App. 2005) (quoting *Jones v. State*, 843 S.W.2d 487, 499 (Tex. Crim. App. 1992)). A trial court abuses its discretion if it acts without reference to any guiding rules or principles. *Lyles v. State*, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993); *Reyes v. State*, 274 S.W.3d 724, 729 (Tex. App.—San Antonio

- 3 -

2008, pet. ref'd). A trial court does not abuse its discretion unless its ruling "falls outside the zone of reasonable disagreement." *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002).

In exercising its discretion to grant or deny a request for a jury view, the trial court must consider the totality of the circumstances of the case, including, but not limited to: (1) the timing of the request for the jury view; (2) the difficulty and expense of arranging it; (3) the importance of the information to be gained by it; (4) the extent to which that information has been or could be secured from more convenient sources (*e.g.,* photographs, videotapes, maps, or diagrams); and (5) the extent to which the place or object to be viewed may have changed in appearance since the controversy began. *Mauricio*, 153 S.W.3d at 393. In addition, the trial court must provide opposing counsel an opportunity to be heard on the question. *Id.*

With regard to the timing of the request, the State filed a notice of its intent to have the jury view evidence outside the courtroom on December 10, 2013. Before trial commenced on December 17, 2013, the trial court considered and granted the State's motion. Therefore, the record reflects that the request for the jury view was made in a timely fashion. In addition, the vehicles were brought to the courthouse; therefore, the arranging of the jury view was not difficult, and the trial court could have concluded the jury view would be quick. In responding to defense counsel's objections, the State explained the importance of the information to be gained, asserting the photographs taken at the scene did not adequately show the damage to the vehicles or the manner in which the vehicles collided. Finally, although defense counsel asserted the vehicles had been at the impound lot for three years, defense counsel did not establish that the condition of the vehicles had changed other than with regard to possible dust and fingerprints. Accordingly, based on the record presented, we cannot conclude the trial court abused its discretion in granting the jury view.

- 4 -

3.      Unfair Prejudice

Ford also objected that the jury view would be unduly prejudicial. The State contends this court should not consider whether the jury view should be excluded under Rule 403 as a separate issue; however, the State cites no support for its contention. In the Houston court's decision in *Mauricio*, the appellant also raised a Rule 403 issue. *See Mauricio v. State*, 104 S.W.3d 919, 920 n.1 (Tex. App.—Houston [14th Dist.] 2003), *aff'd*, 153 S.W.3d 389 (2005). The Houston court explained that it was not addressing the Rule 403 issue because it was not adequately briefed. *Id.* Because we are not convinced that a Rule 403 objection to a jury view cannot be made in addition to an objection based on the law regarding jury views, we address Ford's issue.

Rule 403 of the Texas Rules of Evidence provides, in pertinent part, "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." TEX. R. EVID. 403. In conducting a Rule 403 analysis, the following factors are considered: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible, way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Erazo v. State*, 144 S.W.3d 487, 489 (Tex. Crim. App. 2004). "Evidence is unfairly prejudicial when it has 'an undue tendency to suggest that a decision be made on an improper basis.'" *Pawlak v. State*, 420 S.W.3d 807, 809 (Tex. Crim. App. 2013) (quoting *Montgomery v. State*, 810 S.W.2d 372, 389 (Tex. Crim. App. 1990) (op. on reh'g)). "All evidence is prejudicial to one party or the other — it is only when there is clear disparity between the degree of prejudice of the offered evidence and its probative value that Rule 403 is applicable." *Hernandez v. State*, 390 S.W.3d 310, 324 (Tex. Crim. App. 2012). Similar to a trial court's ruling on jury views, we review a trial court's ruling under Rule 403 for an abuse of discretion. *Pawlak*, 420 S.W.3d at 810.

As discussed in reviewing the jury view issue, the probative value of the evidence was that it showed the actual damage to the vehicles and the manner in which the vehicles collided. Although photographs of the vehicles at the scene were introduced into evidence, the photographs were dark, and the positioning of the vehicles in the photographs made it difficult to visualize the manner in which the two vehicles collided. Similarly, although the diagram showed the area of impact and location of the vehicles after impact, the State wanted the jury to view the vehicles as they were positioned at impact to understand the nature of the collision and the resulting damage. Although the record does not reflect the exact amount of time it took to conduct the jury view, the vehicles were brought to the courthouse, and the trial court's admonishments made it clear that the jury view would be quickly completed. Finally, with regard to the potential to impress the jury in some irrational, yet indelible, way, Ford argues in her brief that "the view of the hulks 'in the flesh' had the tendency to indelibly impress the jury on the violence necessary to achieve the damage." The photographs and testimony that were admitted into evidence, however, should already have impressed upon the jury the violent nature of the collision. Viewing the positioning of the vehicles would only enable the jury to visualize the manner in which they impacted. Accordingly, having considered the Rule 403 factors, we cannot conclude the trial court abused its discretion in overruling Ford's Rule 403 objection.

4.    Harmless Error

Even if we are incorrect in holding the trial court did not abuse its discretion in allowing the jury view, any error in allowing the jury view would not require a reversal unless it affected Ford's substantial rights. TEX. R. APP. P. 44.2. "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Cole v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). In conducting this harm analysis, we consider "everything in the record" including other testimony and evidence before the jury and "the

character of the alleged error and how it might be considered in connection with other evidence in the case." *Morales v. State*, 32 S.W.3d 862, 867 (Tex. Crim. App. 2000). This court will not overturn Ford's conviction for non-constitutional error if this court, "after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998).

In addition to the evidence that Ford was driving the wrong way down the highway and subsequent testing showed her blood alcohol content to be .279, far over the legal limit of 0.08, the jury also heard the testimony of a truck driver who paced Ford's vehicle as he traveled in the southbound lanes, honking his air horn and flashing his lights in an effort to get Ford's attention for over three miles. Furthermore, the jury heard evidence that Ford was arrested for a first DWI in February of 2008. Although Ford could have been convicted of a felony because her ten-year-old daughter was in the vehicle, she was convicted only of a misdemeanor and placed on probation in March of 2009. In June of 2008, Ford was arrested for a second DWI, and was also placed on probation for that offense in August of 2010. Two months later, in October of 2010, she caused the fatal collision that resulted in Belcher's death.

In addition to the foregoing evidence, the jury also heard Ford's own testimony. Ford testified that she only had one drink that night and believed someone placed a drug in her drink; however, the toxicology results did not support her belief. Ford testified she was not aware the trial court previously ordered her not to drive and offered a series of excuses for the reason her vehicle did not contain the ignition interlock system the court previously ordered. Because the jury heard evidence that Belcher had a blood alcohol level of .13, Ford was asked if she believed the alcohol in Belcher's system contributed to the accident, and she responded that she did although she did not blame Belcher for the accident. Ford also testified that although she was driving the wrong way, she believed she was "driving right." Because Ford stated she was requesting

leniency, the prosecutor asked, "Ms. Ford, do you acknowledge that you've already been shown leniency [with regard to the two prior DWI convictions]?" Ford responded, "No."

Having examined the record as a whole, even if we assume the trial court abused its discretion in allowing the jury view, we have "fair assurance that the error did not influence the jury, or had but a slight effect." *Johnson*, 967 S.W.2d at 417. Accordingly, any error by the trial court in allowing the jury view was harmless.

### ATTORNEY'S FEES

In her third issue, Ford contends the evidence is legally insufficient to support the trial court's assessment of attorney's fees against her, noting the record reflects that she had appointed counsel at trial and on appeal. *See Vogt v. State*, 421 S.W.3d 233, 246 (Tex. App.—San Antonio 2013, pet. ref'd); *Smith v. State*, 421 S.W.3d 161, 165 (Tex. App.—San Antonio 2013, no pet.) The State concedes the attorney's fees were improperly assessed. Accordingly, Ford's third issue is sustained, and the trial court's judgment is modified to delete the assessment of attorney's fees.

### CONCLUSION

The trial court's judgment is modified to delete the assessment of attorney's fees. The trial court's judgment is affirmed as modified.

Marialyn Barnard, Justice

DO NOT PUBLISH

- 8 -